UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ALLAN MOONEY, | ) ) ) ) No.: 0:13-cv-00648-DWF-JJG |
| Plaintiff, | ) ) Judge: Hon. Donovan W. Frank |
| v. | ) Magistrate Judge: Hon. Jeanne J. Graham ) |
| FRITO-LAY NORTH AMERICA, INC., and PEPSICO, INC., | ) ) ) Date: June 14, 2013 ) Time: 9:00 AM |
| Defendants. | ) Courtroom: 7C ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR REMAND TO STATE COURT**

Plaintiff Allan Mooney respectfully submits this memorandum of law in support of his Motion for Remand to State Court. Remand is appropriate because Defendants Frito-Lay North America, Inc. ("Frito-Lay") and PepsiCo, Inc. ("PepsiCo") have failed to carry their burden of demonstrating that this action falls within the scope of federal subject-matter jurisdiction. Despite Plaintiff's binding stipulation limiting the amount-in-controversy to the value of $75,000, Defendants have submitted no relevant evidence in support of removal. Rather, the only evidence submitted by Defendants bears on their own potential costs of compliance with injunctive relief—evidence barred from consideration in the Court's amount-in-controversy analysis by longstanding Eighth Circuit precedent. Removal was unreasonable, unsupported and improper, and an award

1

of fees and costs to Plaintiff for having to bring this motion is therefore justified.

Furthermore, the Court should, if possible, expedite its consideration of subject-matter jurisdiction and/or of this motion for remand, so as to avoid unnecessary procedural delay premised upon an improper removal where the jurisdictional question is not a close call and the federal courts have never had jurisdiction over this action.

## **LEGAL STANDARD**

The propriety of removal to federal court depends on whether the claim asserted comes within the scope of the federal court's subject-matter jurisdiction. *See* 28 U.S.C. § 1441(b). The Eighth Circuit has instructed that "[i]n every federal case the [district] court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 (8th Cir. 2006). Courts are instructed to "be attentive to a satisfaction of jurisdictional requirements in all cases." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987). District courts are also encouraged to rule on subject-matter jurisdiction spontaneously: "A district court should *sua sponte* remand a case any time it determines that it lacks subject matter jurisdiction." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1066 (8th Cir. 2000); *see also* 28 U.S.C. § 1447(c).

The party seeking removal and opposing remand has the burden to establish that all prerequisites to federal subject-matter jurisdiction are satisfied. *In re Business Men's Assurance Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993); *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969). Removal statutes are strictly construed, and all doubts about federal subject-matter jurisdiction must be resolved in favor of remand.

*Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997). "[T]he party bearing the burden of proof is not entitled to the benefit of the doubt." *Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 823 (8th Cir. 2010).

A party seeking removal based on diversity of citizenship bears the burden of proving, by a preponderance of the evidence, that the amount in controversy "exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a); *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010). In a suit for declaratory or injunctive relief, the amount in controversy is **the objective value to the plaintiff** of the right that is in issue, a principle known as the "plaintiff's viewpoint rule." *Id.* at 1018–19; *see also Groeneweg v. Flint Hills Res., L.P.*, No. 08-4815 (DWF/FLN), 2008 WL 4951494, at *2 (D. Minn. Nov. 18, 2008) (Frank, J.) ("In the Eighth Circuit, district courts rely on the plaintiff's perspective in determining the amount in controversy."). In the Eighth Circuit, the plaintiff's viewpoint rule has its genesis in *Massachusetts State Pharmaceutical Ass'n v. Federal Prescription Service, Inc.*, 431 F.2d 130, 132 n.1 (8th Cir. 1970), where the Eighth Circuit considered and rejected the proposition that amount-in-controversy might be valued by the cost to defendant of losing if it were higher than the value to plaintiff of winning. The Eighth Circuit concluded that precedent "preclud[ed] the valuation of the amount in controversy from the defendant's viewpoint." *Id.* The Eighth Circuit recently reaffirmed this principle in *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1019 (8th Cir. 2010), stating that "[w]e have never endorsed" the measurement of amount-in-controversy by consideration of the defendant's costs.

Thus, the plaintiff's viewpoint rule wholly ***precludes any consideration of the costs to defendants*** that may be involved in or required by compliance with an award of declaratory or injunctive relief—only the objective value of such relief to the plaintiff may be considered. *E.g.*, *Smith v. American States Preferred Ins. Co.*, 249 F.3d 812, 813–14 (8th Cir. 2001) ("Our own circuit precedent requires the district court to rely solely on the plaintiff's viewpoint in meeting the requisite amount."); *Krenz v. XTO Energy, Inc.*, 770 F. Supp. 2d 1011, 1015 (D.N.D. 2011) (citing *Usery*, 606 F.3d at 1019) ("exclud[ing] consideration" of "cost to the defendant" from declaratory relief setting the validity and scope of an easement because "the Eighth Circuit has recently and specifically stated that 'we have never endorsed this rule.'"); *Price v. Cybertel Cellular Tel. Co.*, No. 4:06-cv-1640 FRB, 2007 WL 1445846, at *2–3 (E.D. Mo. May 14, 2007) (remanding "despite the potentially significant cost to the defendants if the requested relief were to be granted to plaintiff"); *Dakis v. Allstate Ins. Co.*, No. Civ. 02-3679 PAM/RLE, 2003 WL 118245, at *2 (D. Minn. Jan. 8, 2003) (citing *Smith*, 249 F.3d at 813–14) ("disregard[ing]" cost to defendants of compliance with injunctive relief because "the Circuit directly addressed the issue and agreed . . . .");

A plaintiff is the "master of the complaint" with regard to jurisdictional requirements for removal; he may limit his claims, either substantive or financial, to defeat federal jurisdiction. *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). The Eighth Circuit has noted that a binding stipulation by a plaintiff, entered prior to removal and stating that he will not seek an amount in excess of the jurisdictional minimum, is entitled to

4

presumptive weight. *See Bell*, 557 F.3d at 958. In March 2013, the U.S. Supreme Court unanimously recognized the ability of individual plaintiffs to avoid federal jurisdiction by entering into a binding stipulation in *Standard Fire Insurance Co. v. Knowles*, No. 11-1450 (Mar. 19, 2013): "Knowles also points out that federal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement. That is so." *Id.*, slip op. at 6–7.

## BACKGROUND

On February 20, 2013, Plaintiff Allan Mooney commenced this civil action in the Fourth Judicial District, County of Hennepin, for the State of Minnesota by causing service of a summons and complaint on Defendants. Under Minnesota's "hip-pocket service" regime, a civil action is commenced against each Defendant upon service of a summons and complaint. Minn. R. Civ. P. 3.01.

The Complaint stated only Minnesota statutory and common-law claims; no federal claims were asserted. (*See generally* Dkt. No. 1-1.) Plaintiff attached a binding stipulation to the Complaint, limiting his recovery to the sum total value of $75,000. (Dkt. No. 1-1, at 43.) The text of that binding stipulation was:

> Plaintiff Allen Mooney hereby stipulates and declares that he will not seek or accept any recovery in excess of the sum total of $75,000.00 on his own behalf in the above-captioned matter, fully inclusive of compensatory and punitive damages, restitution, attorneys' fees, and/or the value of any personal benefit actually realized from the grant of any declaratory, injunctive, or other equitable relief.

(*Id.*)

On March 21, 2013, Defendants removed the Complaint to this Court. (*See* Dkt. No. 1.) Defendants' Notice of Removal stated that removal was premised upon the existence of diversity jurisdiction under 28 U.S.C. §§ 1332(a), 1441, and 1446. (*Id.* at ¶ 7.) Defendants asserted that the amount-in-controversy exceeded $75,000. (*Id.* at ¶ 13.) Specifically, Defendants asserted that the value to Plaintiff of the injunctive relief requested exceeded the jurisdictional threshold. (*See id.* at ¶ 18, 21.) In support, Defendants attached two declarations. The Declaration of Neil Glover stated that Frito-Lay's net profits from sales of the challenged products in Minnesota were significantly greater than $5,000,000 and that Frito-Lay's gross revenues from the same were significantly greater than $10,000,000. (*Id.* at ¶ 18–19; Dkt. No. 1-2, ¶¶ 4–5.) The Declaration of Mark Jones stated that it would cost Frito-Lay more than $500,000 to recall the challenged products in Minnesota. (Dkt. No. 1, ¶ 20; Dkt. No. 1-3, ¶ 4.)

## **ARGUMENT**

This case does not present a close call for the Court; it must be remanded to Minnesota state court due to a complete lack of support for removal in either fact or law. Plaintiff attached a binding stipulation to his Complaint, limiting his claims and his recovery to below the jurisdictional threshold. That stipulation is facially valid and entitled to presumptive weight in the absence of contradictory evidence, yet Defendants have only submitted evidence pertaining to their potential costs from compliance with injunctive relief. Evidence pertaining to Defendants' costs is irrelevant and barred from consideration under this circuit's longstanding precedent regarding the plaintiff's viewpoint rule. Defendants have failed to provide any evidentiary support for their lone

justification for removal—the value of injunctive relief—as they have submitted no evidence on amount-in-controversy relevant to the value of injunctive relief from Plaintiff's viewpoint. As a matter of common sense, it is legally impossible for the value of injunctive relief to Plaintiff to exceed the retail price he has or would have paid for the challenged products, which is far below $75,000 by any reasonable method of calculation. The Court has the discretion to award costs and attorneys' fees where removal was unreasonable, and should do so here, where removal was improper under well-settled Eighth Circuit precedent that bars all of the factual evidence Defendants submitted in support. The Court should also expedite its consideration of subject-matter jurisdiction and/or Plaintiff's remand motion in order to avoid an unnecessary delay of justice from Defendants' unjustified and improper removal, because the matter at issue before the Court is simple and clear-cut on its face.

## I. Defendants Have Failed to Meet Their Burden of Proof to Justify Removal

The issue before the Court is whether Defendants have met their burden of showing, by a preponderance of the evidence, whether the prerequisites for diversity jurisdiction have been met. Specifically, in light of Plaintiff's binding stipulation limiting his claims to $75,000 (Dkt. No. 1-1, at 43), the question for resolution is whether Defendants supported their Notice of Removal with evidence to contradict Plaintiff's stipulation, which is otherwise entitled to presumptive weight. Defendants based their removal entirely on the contention that the injunctive relief requested in the Complaint has a value to Plaintiff of more than $75,000. (Dkt. No. 1, ¶¶ 18, 21.) However, Defendants failed to support their contention with any relevant facts. The two factual

affidavits submitted by Defendants speak only to the costs that Defendant might incur in complying with injunctive relief—facts that binding Eighth Circuit precedent requires the Court to disregard, pursuant to the plaintiff's viewpoint rule. Because Defendants failed to state any facts relevant to the value of injunctive relief to Plaintiff under the plaintiff's viewpoint rule, there was no factual justification for removal and this case must be remanded to Minnesota state court.

### A.   *Plaintiff's Binding Stipulation Limiting the Amount-In-Controversy to $75,000 Is Entitled to Presumptive Weight*

Plaintiff's limitation of his claims to the sum total of $75,000, inclusive of all recovery including injunctive relief as measured from his viewpoint, is entitled to deference and presumptive weight. The Eighth Circuit has stated that a plaintiff may "ensure that any attempt to remove would [be] unsuccessful" by including a binding stipulation with his complaint, limiting recovery to below the jurisdictional minimum. *Bell*, 557 F.3d at 958. The U.S. Supreme Court recently reaffirmed that an individual plaintiff may "avoid removal" and "obtain a remand to state court" by entering a binding stipulation limiting his claims to less than the jurisdictional amount. *Standard Fire*, No. 11-1450, slip op. at 6–7. Thus, beyond Defendants' standard burden of proof by a preponderance of the evidence, Defendants had the burden to provide facts tending to show that Plaintiff's binding stipulation should not be regarded as controlling.

Defendants criticize Plaintiff's binding stipulation on two grounds, each of which is a misstatement of the law. First, Defendants argue that the "stipulation does not purport to limit the value of the injunctive relief sought to Minnesota citizens other than

Plaintiff." (Dkt. No. 1, ¶ 23.) Defendants cite no reason why it should have done so. The only relevant metric for jurisdictional purposes is the value to the individual Plaintiff of the injunctive relief requested—not the value it may have to anyone else. *See Smith*, 249 F.3d at 813–14 ("[Eighth] circuit precedent requires the district court to rely solely on the plaintiff's viewpoint in meeting the requisite amount."). Prior to the enactment of the Class Action Fairness Act ("CAFA") (which abrogated the rule only in the context of class actions), long-settled precedent forbade the aggregation of claims among separate plaintiffs to satisfy the amount-in-controversy requirement for federal jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 571–72 (2005). The rule against aggregation extends to injunctive relief. *See Mass. St. Pharm. Ass'n*, 431 F.2d at 132 & n.1. In this case, of course, there are not even any separate plaintiffs—only a single Plaintiff, and Defendants quite correctly did not assert CAFA as a basis for removal. Thus, while the vindication of Plaintiff's individual rights will certainly have a public benefit for the citizens of Minnesota (*see* Dkt. No. 1-1, ¶¶ 103, 112), any valuation of that public benefit is inapposite for the purpose of jurisdictional analysis.

Second, Defendants argue that Plaintiff's binding stipulation was "merely . . . asserting that his subjective valuation of the amount in controversy is less than $75,000," and not determining its "actual value." (Dkt. No. 1, ¶ 24.) Certainly, it is true that the objective value of the injunctive relief to Plaintiff is the controlling question. *See Usery*, 606 F.3d at 1019. But Defendants' use of the term "**subjective**" here is misleading— because that objective valuation must in any case be made from Plaintiff's viewpoint. *See id.* If Defendants had provided any evidence to controvert Plaintiff's binding stipulation,

their criticism of the stipulation might be more relevant; without contradictory evidence, it does not disturb the stipulation's facial validity. As Plaintiff will further explain, Defendants have not provided *any* evidence relevant to an objective determination of the value of injunctive relief from the Plaintiff's perspective.

> B.  *The Defendants' Viewpoint Is Not Relevant to the Amount-In-Controversy, and Eighth Circuit Precedent Requires the Court to Disregard Facts About Defendants' Cost of Compliance With Injunctive Relief*

Although Defendants bore the burden of proving amount-in-controversy by a preponderance of the evidence, the only factual evidence supplied by Defendants is irrelevant to this determination. Defendants supplied two affidavits, providing evidentiary support for the following facts:

> 1. Frito-Lay's net profits from sales of the challenged snack food products in Minnesota alone were significantly greater than $5,000,000, in each of 2010, 2011, and 2012. (Dkt. No. 1-2, ¶ 4.)
> 2. Frito-Lay's gross revenues from sales of the challenged snack food products in Minnesota alone were significantly greater than $10,000,000, in each of 2010, 2011, and 2012. (*Id.* at ¶ 5.)
> 3. It will cost Frito-Lay more than $500,000 to immediately recall the challenged snack food products in Minnesota alone. (Dkt. No. 1-3, ¶ 4.)

Solely for the purposes of this motion for remand, Plaintiff concedes each of these factual statements. But these statements are wholly irrelevant to the matter before the Court.

The first and second factual statements appear to signal that Defendants believe that Plaintiff's lawsuit threatens to disrupt Frito-Lay's profits and revenues if successful. (*See also* Dkt. No. 1, ¶ 21.) This would constitute a cost to Frito-Lay, not a benefit to Plaintiff. The third statement also reflects an estimate of the costs that Frito-Lay would

10

incur in complying with Plaintiff's requested injunctive relief. Unlike in *Usery*, where the loss of a defendant necessarily reflected the value gained by a plaintiff in an action to quiet title to a mineral interest—since the actual value of the mineral interest would change hands—here Defendant's potential costs bear no relationship whatsoever to the actual value that Plaintiff will gain by an injunction.

Defendant's assertion that these facts are relevant to the propriety of removal contradicts almost a half-century of binding precedent. Over forty years ago, the Eighth Circuit examined and rejected the proposition that defendants' costs could be used to value amount-in-controversy. *Mass. St. Pharm. Ass'n*, 431 F.2d at 130, 132 n.1. The Court is precluded from considering the costs to Defendants that may result from injunctive relief in valuing that relief—only the value from Plaintiff's viewpoint is relevant. *E.g.*, *Smith*, 249 F.3d at 813–14; *Krenz*, 770 F. Supp. 2d at 1015 (citing *Usery*, 606 F.3d at 1019); *Price*, 2007 WL 1445846, at *2–3; *Dakis*, 2003 WL 118245, at *2. Defendants, who are sophisticated multinational corporations represented by experienced counsel, should have known or had reason to know that facts regarding their potential costs were irrelevant to the legal standard for removal under longstanding precedent in this Circuit. Nevertheless, Defendants failed to provide any evidence relevant to the value of the injunctive relief from the Plaintiff's viewpoint.

C. ***Defendants Have Supplied No Relevant Evidence to Contradict Plaintiff's Binding Stipulation Limiting the Amount-In-Controversy to $75,000***

Although Defendants submitted evidence in support of three factual statements, each of those facts pertains to Defendants' costs and must be disregarded as irrelevant to

11

Plaintiff's viewpoint of the value of injunctive relief. Without relevant evidence, Defendants have failed to contradict Plaintiff's binding stipulation limiting his recovery to $75,000, and more fundamentally, have failed to carry their burden of proof by a preponderance of the evidence. Since Defendants had the burden of proving the propriety of removal by a preponderance of the evidence, the bare unsupported statement that "the value to Plaintiff of the injunctions he seeks easily totals more than $75,000" does not suffice and need not be considered further. (Dkt. No. 1, ¶ 21.)

While it would be improper for Defendants to engage in theory or conjecture to support this contention in the absence of supporting evidence, Plaintiff takes this opportunity to explain why it is legally impossible for the value to Plaintiff of the injunctive relief requested to come anywhere near meeting the jurisdictional threshold, even in theory. Plaintiff Mooney is an individual consumer, who prior to this lawsuit purchased a variety of Frito-Lay snack food products approximately once per month in 2010, 2011, and 2012. (*See* Dkt. No. 1-1, ¶ 15.) Logically, Plaintiff cannot derive a greater value from any injunctive relief than the price that he has paid, or would have paid, for the allegedly falsely-labeled products themselves. The maximum possible value of an injunction from Plaintiff's viewpoint is therefore equivalent to the price Plaintiff would have been charged for the challenged products, absent relief enforcing proper labeling or removing improperly labeled products from the market.

To illustrate the absurdity of Defendants' unsupported claim that the injunctive relief would be worth more than $75,000 to Plaintiff, consider this hypothetical illustration. According to the Complaint, Plaintiff has in the past purchased Frito-Lay

snack food products at the rate of approximately one per month. (*See id.*) Even if these snack food products had an average retail price of $10—an exceedingly generous estimate—it would take 625 years for Plaintiff to purchase $75,000 worth of Frito-Lay snack food products at that retail price. Absent the unforeseen hyperinflation of snack food prices, it is quite literally impossible for Plaintiff to purchase $75,000 worth of Frito-Lay snack food products in his entire lifetime.

A more realistic value of the maximum benefit to Plaintiff from injunctive relief, for the purposes of jurisdictional analysis, would calculate the sum total retail price of Plaintiff's likely Frito-Lay snack food product purchases as extended over the next ten or twenty years. Even at an average retail price of $10—which is, again, an exceedingly generous estimate—Plaintiff would have spent only $120 yearly on Frito-Lay snack food products. Over ten years, he would have spent only $1,200; over twenty only $2,400. Even if Plaintiff lived another eighty years, he would have spent only $9,600 on Frito-Lay snack food products. This is, of course, a ***maximum*** estimate of the value to Plaintiff; in actuality, the value (*i.e.*, the damages Plaintiff has or would have suffered) is likely to be something less than the full retail price of the challenged products, though this will depend on discovery of facts currently unknown to Plaintiff. Thus, even under a theoretical analysis, it is legally impossible for the value of the injunctive relief to approach $75,000—and the actual value of any injunctive relief is legally certain to be well within the limits articulated by Plaintiff's binding stipulation.

## II.     An Award of Costs and Attorneys' Fees Is Warranted In This Case

Plaintiff Mooney has also moved the Court to award Plaintiff with his costs, expenses, and attorneys' fees incurred as a result of removal. The Court may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The standard for determining whether to award fees under § 1447(c) turns on the reasonableness of the removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* The Court retains discretion over its determination whether to award fees under § 1447(c). *Id.* This Court has awarded attorney fees and costs where defendants "lacked a reasonable basis" for arguing that a joined defendant should be disregarded in the Court's jurisdictional analysis, and where the Court found that "diversity jurisdiction clearly did not exist and removal was improper." *H.B. Fuller Co. v. BRTT, Inc.*, No. 08-295 (DWF/AJB), 2008 WL 1924182, at *5 (D. Minn. Apr. 29, 2008) (Frank, J.).

In this case, despite bearing the burden of proof, the only evidence supplied by Defendants on the amount-in-controversy was on the subject of their potential costs of compliance with injunctive relief. Defendants, which are sophisticated multinational corporations employing sophisticated legal counsel, should have known or had reason to know that such evidence was irrelevant to the Court's determination and that the Court was barred from considering it by a line of precedent dating back more than forty years. Insofar as Defendants have argued, or might argue, that this binding precedent should be

14

disregarded or overturned, such argument is not objectively reasonable. And without relevant evidence, there is no objectively reasonable argument to be made that Defendants had even attempted in good faith to meet their burden of proof. One unusual circumstance that the Court should take into account is the fact that Plaintiff entered into a binding stipulation limiting his recovery to less than the jurisdictional threshold. Despite this, Defendants removed the case to federal court without supplying any relevant evidence. Diversity jurisdiction clearly did not exist here, and removal was improper.

Another unusual circumstance worthy of consideration is that Defendants' improper removal here is joined with an attempt to transfer this action across the country to the Eastern District of New York. If successful, Defendants would gain the benefit of significant delay and inconvenience to Plaintiff—premised upon an improper removal, when the federal courts had no subject-matter jurisdiction over this action to begin with. This is an increasingly common tactic by defendants, to deprive states and state forums of the power to defend their own citizens, and to discourage and inconvenience plaintiffs. It is only possible here due to Defendants' disregard of longstanding precedent, and the Court should take the opportunity to award costs and fees to discourage such behavior.

**III.     The Court Should Expedite Its Consideration of Subject-Matter Jurisdiction and/or this Motion for Remand to Avoid an Unnecessary Delay of Justice and Unnecessary Burden on Plaintiff**

The Court has the inherent authority and discretion to manage this case, and its docket, in the interests of justice. The Eighth Circuit has encouraged district courts to rule on subject-matter jurisdiction spontaneously. *In re Atlas Van Lines*, 209 F.3d at 1066. As

Plaintiff has shown, there is little doubt that this case will be remanded to state court due to Plaintiff's binding stipulation limiting amount-in-controversy to below the jurisdictional minimum, and the total lack of any evidence contradicting that stipulation. Removal was facially improper, and Plaintiff will suffer an unnecessary delay of justice and an unnecessary burden if Defendants' delay tactics are successful in taking this case on a procedural detour across the country. For these reasons, the Court should expedite its consideration of subject-matter jurisdiction and/or of this motion to dismiss.

Defendants are simultaneously attempting to transfer this case to the Eastern District of New York by exploiting the Judicial Panel on Multidistrict Litigation transfer process. If Defendants are successful, their removal—which was clearly improper under Eighth Circuit precedent—and Plaintiff's remand motion will instead be judged under Second Circuit precedent. *See, e.g.*, *Menowitz v. Brown*, 991 F.2d 36, 40–41 (2d Cir. 1993) (holding that a transferee court applies its own interpretation of federal law without regard to precedent in the transferor court). While the Second Circuit also follows the plaintiff's viewpoint rule, Plaintiff will be disadvantaged because Second Circuit case law on the matter is less concrete than the Eighth Circuit's definitive statements. *See, e.g.*, *Kheel v. Port of N.Y. Authority*, 457 F.2d 46, 49 (2d Cir. 1972), *cert. denied*, 409 U.S. 983 (1972); *McGowan v. Cadbury Schweppes, PLC*, 941 F. Supp. 344, 346–47 (S.D.N.Y. 1996); *Cowan v. Windeyer*, 795 F. Supp. 535, 537 (N.D.N.Y. 1992). In addition, Plaintiff, an individual consumer, will be unnecessarily burdened by having to bear the costs of representing himself in a federal court across the country when the federal courts have had no jurisdiction over this case from its inception.

There is no reason for this Court to wait and see what the JPML will do, or to let a transferee court decide remand. It has the full power and authority to rule on subject-matter jurisdiction and/or on this motion for remand, prior to the Conditional Transfer Order becoming final. *See* JPML Rule 2.1(d); *Ill. Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir. 2004). Because removal was facially improper and unreasonable under longstanding Eighth Circuit precedent, this Court should not allow Defendants' tactics to impose delay and burdensome inconvenience onto Plaintiff. Instead, the Court should rule on subject-matter jurisdiction on an expedited or spontaneous basis, and preempt transfer across the country by remanding this case to Minnesota state court. This will promote the interests of justice and discourage disingenuous procedural strategies where the federal courts have had no jurisdiction over this case since it was first commenced in Minnesota state court.

## CONCLUSION

Defendants have failed to carry their burden of demonstrating that this case has satisfied all jurisdictional requirements for removal based upon diversity jurisdiction. In the face of a binding stipulation limiting the amount-in-controversy to under $75,000, Defendants claimed that the injunctive relief was worth more than $75,000 to Plaintiff. Defendants failed to support their statement with any relevant evidence on the matter whatsoever, pursuant to the Eighth Circuit's longstanding plaintiff's viewpoint rule. This case, presenting the individual state law claims of a single Plaintiff, pleaded in accordance with state law and subject to a binding stipulation, has been needlessly delayed by removal to this Court. For all of the foregoing reasons, this case should be

17

immediately remanded to state court, and all costs, expenses and attorneys' fees incurred by Plaintiff in connection with having to bring this motion to remand should be awarded to Plaintiff.

                                            Respectfully submitted,

DATED: April 4, 2013

                                      By:      /s/ Paul R. Hansmeier
                                                Paul R. Hansmeier (MN Bar #387795)
                                                CLASS ACTION JUSTICE INSTITUTE, LLC
                                                40 South 7th Street
                                                Suite 212-313
                                                Minneapolis, MN 55402
                                                Telephone: (612) 234-5744
                                                mail@classjustice.org
                                                *Attorney for Plaintiff*